**MISCO, INC., Plaintiff-Appellee**

v.

**UNITED PAPERWORKERS INTERNATIONAL UNION, AFL–CIO, and Quachita Local 654, Defendants-Appellants.**

**No. 84–4727.**

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1985.

Robert H. Urann, Metairie, La., Mark M. Brooks, United Paperworkers Intern. Union, Nashville, Tenn., for defendants-appellants.

A. Richard Gear, Monroe, La., for plaintiff-appellee.

Before GEE, TATE, and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

In today's case we review a determination by the district court that the award of an arbitrator contravenes well-defined public policy and hence should not be enforced.

In the course of an opinion perhaps most kindly described as whimsical,[1] the arbitrator noted the following facts, among others, as established by the evidence that he heard. The employer's plant, where grievant Cooper worked, had a drug and drinking problem. The night shift in particular, of which Cooper was a member, had experienced problems with production and accuracy not encountered by the day shift. At an employee meeting called for the purpose, the employer had emphasized its strong policy against possession or use of drugs or alcohol on its premises. Cooper was aware of the employer's long-standing rule against bringing such substances onto plant premises or consuming them there.

Cooper's job was to operate an unusually dangerous machine called a slitter-rewinder, which cuts rolling coils of paper by means of sharp blades and which had caused numerous injuries. Operating such a machine with judgment and coordination impaired by substance abuse creates a safety hazard to the operator and to other employees. Cooper had been twice reprimanded for shoddy, inattentive work—the very type the employer believed might be attributable to such abuse—the last time

---

1. The opinion observes at its outset, for example: "The Arbitrator informed the parties that he is a Creek American Indian." This curious item is matched by equally curious reasoning. At one point, for example, the arbitrator criticizes the employer for not having the investigation of Cooper's incident conducted by "some higher, detached Company official," notwithstanding that it was directed by the president of the company, assisted by the production supervisor. At another, he concludes that the employer's immediate discharge of Cooper for drug use was not reasonable because another stated ground for discharge was unauthorized reading on duty.

on the day before the events leading to his discharge.

On the day in question, January 21, 1983, police searched Cooper's home under a warrant, finding several bags of marijuana, marijuana cigarettes, cigarette papers, and a weighing scale. While this was being done, another police officer had Cooper's automobile under surveillance on the plant parking lot. About 6:30 p.m., during shift working hours, Cooper and two companions came out of the plant and two or more of the three entered Cooper's car momentarily. The three then walked a short distance to another car and entered it. Some time later, the other two men returned to the plant, leaving Cooper sitting in the back seat of the car. He was apprehended there by police, with marijuana smoke in the air and a lighted marijuana cigarette in the front-seat ash tray.

Cooper refused to say who had been with him in the car, persistently denied that he had been using the drug—although found breathing its smoke—and at the arbitration hearing testified falsely under oath (so the arbitrator found) that he had not been in the car when apprehended but standing elsewhere in the parking lot. A search of his own car on the lot revealed a plastic scales case containing marijuana residue, although the employer did not know this last when it discharged him. On these facts, unaccountably reciting that "the Company has not proved by any level of evidence that the Grievant was in violation of the [substance abuse] Rule," the arbitrator directed the reinstatement of Cooper

with full back pay, seniority, and so forth.[2] The district court, in main reliance on our decision in *Amalgamated Meat Cutters v. Great Western Food Co.*, 712 F.2d 122 (5th Cir.1983), set aside the arbitrator's award as against well-defined public policy—the Louisiana law against possession of marijuana and the public policy, embodied in the employer's rule, against introduction of drugs into the work place and consequent operation of dangerous machinery by persons under their influence.

In *Amalgamated Meat Cutters*, a driver who admitted having been drinking had wrecked his employer's truck and was consequently discharged. The arbitrator, in an award reminiscent of the one we contemplate today, ordered his reinstatement because the employer failed to disprove to his satisfaction the driver's claim that equipment failure caused the wreck. As the district court noted, speaking of *Amalgamated* in its opinion in today's case:

> The district court enforced the arbitrator's award and the Fifth Circuit reversed. The basis of the appellate court's ruling was that the arbitrator's award violated "the public policy of preventing people from drinking and driving...." *Amalgamated Meat Cutters, supra,* at 125. The court specifically found that the policy was sufficiently well defined and definite because the policy against drunk driving is "embodied in the case law, the applicable regulations, statutory law, and pure common sense...." *Id.* In reaching this decision, the court noted:

**2.** This baffling view of evidence that would with ease have sustained a civil verdict and probably a criminal conviction is perhaps partially explained by the circumstance that, by his academic degrees, the formal training of the arbitrator, a Dr. Milden J. Fox, Jr., was as an engineer and not as a lawyer. He seemed especially impressed, for example, by the fact that there was no direct testimony that anyone in the car where Cooper was found was *seen* to light a cigarette, and "it would have been difficult for [the surveilling officer] not to have seen someone light a cigarette...." We can only view the quoted phrase as indicating doubt about whether there indeed *was* a lighted cigarette in the car, which in other portions of his writing the

arbitrator treats as established: "The only thing that the Company has proven is that the Grievant was sitting in the back seat of a car in which there was found a lit marijuana cigarette in the front seat ashtray...."

We note in passing that, although lacking personal experience in such matters, we had thought it common knowledge that the narcotic effect of marijuana can be obtained by simply sitting in a small enclosure where smoke from it is present. It is not clear from the record whether or not the car windows were closed, but—given that the incident occurred on an evening in late January—it is a reasonable inference that they were.

In a nation where motorists practically live on the highways, no citation of authority is required to establish that an arbitration award ordering a company to reinstate an over the road truck driver caught drinking on duty violates public policy. Alcohol impairs a person's coordination, and inhibits his ability to reason rationally. Ingestion of alcohol slows the reflexes. It induces drowsiness. It slows response time to external stimuli. It dulls the senses. In recognition of alcohol's undisputedly debilitating characteristics, every state in the union prohibits driving while under its influence. A driver who imbibes the spirits endangers not only his own life, but the health and safety of all other drivers. These considerations are convincing enough with respect to drivers of automobiles. They become even more compelling when the driver is regularly employed to course the highways in a massive tractor-trailer rig.

*Id.* at 124.

The same can be said of the intoxicating effects of marijuana. Similarly, an operator of a dangerous piece of industrial equipment can be said to present the same danger to himself and to his co-employees as an operator of a tractor-trailer rig does to fellow motorists. The Union argues that *Amalgamated Meat Cutters* can be distinguished from the instant case in that the truck driving employee admitted having consumed alcohol before the wreck. It is true that Cooper has consistently denied using or bringing marijuana onto Misco's premises; nonetheless, the arbitrator's findings of fact clearly indicate that the brown plastic case found in Cooper's car contained marijuana. Notwithstanding this fact, and the inferences to be drawn from it, the arbitrator still found that Cooper should be reinstated. It is true that the company did not know of the officer's discovery until shortly before arbitration

began, but the real issue in this case is not when the company learned of the incident, but whether reinstatement is appropriate at this point.

We agree with Judge Stagg that *Amalgamated Meat Cutters* controls this case. In it we held that whether or not the wreck in question was caused by the driver's admitted consumption of spirits on the job, "[t]o enforce the arbitrator's award in this case, an award which compels the reinstatement to driving duties of a truck driver who admittedly drank while on duty, would violate ... public policy." 712 F.2d at 125. Thus the employer's procedural omission to rule out mechanical failure as the proximate cause of the wreck simply did not matter.

 In today's case, although Cooper denied it, the arbitrator found that—contrary to Cooper's untruthful testimony—he was apprehended on company premises in an atmosphere of marijuana smoke in another's car and marijuana was found in his own car on the company lot. The pertinent company rule, promulgated pursuant to a collective bargaining agreement provision permitting the company to impose rules,[3] provides, under the heading CAUSES FOR DISCHARGE:

> Bringing intoxicants, narcotics, or controlled substances into, or consuming intoxicants, narcotics or controlled substances in the plant, or on plant premises. Reporting for duty under the influence of intoxicants, narcotics, or controlled substances.

The rule draws no distinctions between "residue" and "usable quantities," nor need it do so. Yet, although Cooper violated it, the award directs his reinstatement at work on the slitter-rewinder. This is contrary to *Amalgamated Meat Cutters*, in which there was no finding that the driver was drunk, only that he had taken a drink on the job. In adopting plant rules, an employer is not narrowly limited to de-

---

**3.** A portion of the collective bargaining agreement reserves to management the right "to unilaterally establish, modify, and enforce the plant rules or regulations and/or disciplinary procedures, policies and practices; ...."

nouncing acts already made criminal by the law but may, at a minimum, adopt reasonable prophylactic measures going beyond the statutes. As examples, we think it scarcely open to doubt that rules forbidding the introduction of drug paraphernalia onto plant premises (with or without the accompanying drugs) or firearms (loaded or not) would be valid—and the former a valid expression of the policy which we have discussed. If so, it follows that a rule forbidding the introduction on plant premises of marijuana in any quantity whatever would be equally so.

The arbitrator in today's case, focusing chiefly on his conception of "industrial due process," ruled for Cooper in great part because the employer did not at the time it discharged him *know* of the marijuana residue that he undeniably brought onto the plant parking lot. That his ruling was in the teeth of the other evidence recited we need not further belabor, for that is not the point.

█ Rather, it is that his narrow focus on Cooper's procedural rights has led him to enter an award directing the employer to put Cooper back to operating a hazardous machine, dangerous to himself and to others, at a time when the arbitrator knew that in fact Cooper *had* brought drugs onto company premises, in violation of Louisiana law and of a clearly-stated company rule. The public policy involved today is the same as that we relied on in *Amalgamated Meat Cutters:* one against the operation of dangerous machinery by persons under the influence of drugs or alcohol. Gazing at the tree, and oblivious of the forest, the arbitrator has entered an award that is plainly contrary to serious and well-founded public policy.

Such an award overrides the employer's attempt to protect the safety of its employees, including Cooper, in the name of safeguarding Cooper's abstract procedural rights against a determination by the employer that the arbitrator knew was in fact true: that Cooper *did* bring marijuana onto his employer's premises. Indeed, even had the arbitrator not known of that fact at the time he entered his award, it is doubtful that the award should be enforced today in light of what is now known.

. The judgment of the district court declining to do so is

AFFIRMED.

TATE, Circuit Judge, dissenting.

I respectfully dissent. Despite the brilliant caricature by the majority of the lay arbitrator's decision, the arbitrator's opinion squarely decides the only arbitral issue presented—whether Cooper, the discharged employee, had been wrongfully discharged for sitting in a car in which *another* employee was smoking marijuana, for the alleged violation of a rule that prohibited the employee himself from bringing or consuming marijuana on the plant premises—and squarely finds that Cooper himself had not violated the company rule.

Essentially questioning these arbitral findings, the majority nevertheless finds it to be against public policy to enforce this arbitral award. In support of this holding, the majority not only relies upon its disagreement with the arbitrator's reasoning, but it also relies upon the circumstance that a non-usable trace of marijuana had been found on a scale in the employee's car (for which no criminal charges had ever been filed)—a fact unknown to the employer at the time of the discharge, and one which the arbitrator found to be inadmissible as post-hoc justification for the discharge that was based on another cause (aside from the issue of whether a non-usable trace of marijuana (verifiable as such only by microscopic or chemical analysis) in an employee's car constituted a violation of the company rule against bringing marijuana on the premises).

In their zeal to correct what the majority feels is a mistaken and misreasoned arbitration decision, my conscientious brethren of the majority, I fear, have (for reasons to be stated in parts I and II below) ignored controlling principles of the extremely limited permissible judicial review of such awards, and the extremely limited circum-

stances in which courts may deny enforcement of them. Absorption into the federal courts of greater power to review arbitration awards flouts the national policy favoring contractual resolution of disputes between management and employees and disfavoring detailed judicial monitoring of dispute-resolution under arbitration agreements.

The brilliant and plausible majority opinion does not discuss the governing principles. Perhaps too lengthily, therefore, I will attempt to set them forth and to state how, in my view, the majority erred in failing to apply them in this case.

## I.

Under settled principles by which judicial review of arbitration awards is "sharply circumscribed", *Local Union 59, International Brotherhood of Electrical Workers v. Green Corporation*, 725 F.2d 264, 268 (5th Cir.1984), we cannot question (a) the arbitrator's factual evaluation of the evidence before him as not proving that Cooper possessed or used marijuana on the plant premises, (b) the arbitrator's interpretation of the contractual provision as not providing grounds for discharge if Cooper was in a vehicle where someone else was smoking marijuana, or (c) the arbitrator's procedural ruling that evidence unknown to the employer at the time of the discharge, but subsequently discovered by him, was not probative of the issue before the arbitrator as to whether at the time of the discharge the employer had a contractually valid cause to discharge Cooper. *Id.*, citing and quoting from the *Steelworker's Trilogy: United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrier & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

These decisions hold that courts may not review an arbitrator's factual findings or merit determinations and that courts must enforce an arbitrator's award unless "[1] the dispute was not 'arguably arbitrable,' [2] ... the arbitral decision did not draw its essence from the collective bargaining agreement, or [3] ... enforcement of the award by the court would violate public policy." *Amalgamated Meat Cutters and Butcher Workmen of North America AFL–CIO, Local Union 540 v. Great Western Food Company*, 712 F.2d 122, 123–24 (5th Cir.1983) (citations omitted).

Thus, whether we are inclined to agree with the arbitrator's rulings or whether, instead, we think they are strained, is immaterial for purposes of judicial review. For these purposes, the arbitrator's factual finding is conclusive on the courts that Cooper did not possess or use marijuana on the plant premises, or bring it onto them.

## II.

In its refusal to enforce the arbitrator's award, the district court did not disregard these principles. Rather, it refused to afford judicial enforcement of the arbitrator's award on the ground that its enforcement would be contrary to public policy, a holding affirmed by the majority. In so doing, the district court relied only upon the evidence that the arbitrator had refused to consider: that in Cooper's car in the plant's parking lot had been found the brown plastic case containing gleanings determined, on laboratory analysis (eight months later) to be marijuana. The district court concluded that this possession of marijuana not only constituted a violation of criminal law but also of "the company's rule barring introduction of intoxicants into the work place—a rule that is designed to effectuate the public policy against unsafe operation of heavy equipment by a worker whose judgment has been impaired by intoxicating substances."

Had the evidence in the arbitration proceeding clearly shown possession of usable marijuana or its use on the plant premises, the district court's and the majority's characterization of public policy reasons for non-enforcement of the award would be persuasive. However, although undoubtedly a public policy reason supports non-

use of marijuana (legally prohibited), no public policy authority is cited to us that an employee who uses marijuana or alcohol in his off-duty hours is unemployable or is without more subject to discharge for such non-employment-related use; however condemnable we might feel is such off-duty conduct by the employee. *Cf., e.g., Johns-Mansville Sales Corporation v. International Association of Machinists, Local Lodge 1609*, 621 F.2d 756 (5th Cir.1980) (enforcing arbitrator's award that ordering reinstatement of employees discharged for smoking on company property, despite rejected public policy argument that smoking increases health hazards in the work environment).

In *W.R. Grace and Company v. Local Union 759, International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), the Supreme Court ordered enforcement of an arbitrator's decision, rejecting strong public policy arguments that to enforce the award would penalize the employer for its prior compliance with an earlier district court judgment (which subsequently had been reversed on appeal). The Court agreed that "a court may not enforce a collective bargaining agreement that is contrary to public policy" and that "[i]f the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it." 461 U.S. at 766, 103 S.Ct. at 2183. In rejecting a public-policy-based denial of enforcement, the Court stated that, for public policy reasons to justify the judiciary to deny enforcement of an arbitration, the public policy "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal principles and not from general considerations of supposed public interests.'" *Id.*

In finding in the present case that the public policy exception justified denial of judicial enforcement of the arbitrator's award, the district court (as does the majority) principally relied upon *Amalgamated Meat Cutters, supra*, in which we noted that "[a] court should exercise extreme caution before declaring that an arbitral award violates public policy," 712 F.2d at 124, but nevertheless denied enforcement of "the arbitrator's award in this case, an award which compels the reinstatement to driving duties of a truck driver who admittedly drank while on duty," on the ground that enforcement would violate the well defined public policy "of preventing people from drinking and driving," 712 F.2d at 125.

In *Amalgamated Meat Cutters*, the arbitrator had specifically found that the discharged truck driver (involved in an accident in which his eighteen-wheel rig had overturned) had been drinking on the trip while driving his truck at work. (The arbitrator had nevertheless ordered reinstatement, on the ground that the employer had failed to disprove that a steering mechanism failure, rather than the driver's drinking, had caused the accident.) Distinguishably from the case now before us, however, in *Amalgamated Meat Cutters* the arbitrator had specifically found that the truck driver *on the job* engaged in hazard-creating conduct in violation of public policy (although nevertheless, on technical reasons, the arbitrator had ordered reinstatement).

In the present case, the enforcement of the arbitrator's award would not, under the principles of extremely limited judicial intervention with regard to arbitration awards, violate the public policy "against unsafe operation of heavy equipment by workers whose judgment had been impaired by intoxicating substances," relied upon by the district court. The evidence of marijuana traces found in Cooper's car does not establish either that Cooper used marijuana while performing work for Misco or that his judgment during work was impaired by intoxicating substances. The arbitrator found, moreover, that Cooper neither used nor possessed, nor was under the influence of, marijuana at work. And the traces found in Cooper's car, even if considered by the arbitrator, would not, without more, lead to a contrary result, any more than an empty beer can in an employer's car would prove that he had been drinking on the work premises rather than elsewhere.

*Amalgamated Meat Cutters, supra,* is thus clearly distinguishable. The discharged employee there was actually consuming liquor while performing his job as a truck driver. Reinstatement would therefore have violated the public policy against drinking while driving. In this case, however, even though possession of marijuana violates *a* public policy, *see* La.Rev.Stat. Ann. § 40:966(D), we cannot say that reinstatement of an employee in whose car were found non-employment-related traces of marijuana would violate any "well defined and dominant" public policy against using or being under the influence of marijuana *while at work.*

*Conclusion*

For the reasons assigned, therefore, I respectfully dissent. In violation of settled principles limiting judicial intervention in employment-dispute resolution through arbitration, the majority errs in refusing to accept the facts of non-violation found by the arbitrator, simply because it disagrees with the arbitrator's reasoning, and in refusing to enforce the arbitral award based upon purely rhetorical reasons of public policy beyond the facts actually found in the arbitration record.