798 F.2d 1415
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 PREMIUM BUILDING PRODUCTS CO., Plaintiff-Appellant,
v.
UNITED STEELWORKERS OF AMERICA, LOCAL UNION NO. 8869, et
al., Defendants-Appellees.
 
 No. 85-3749.
 United States Court of Appeals, Sixth Circuit.
 July 15, 1986.
 Before MARTIN, KRUPANSKY and GUY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Premium Building Products Company, appeals from a district court order granting summary judgment in favor of defendant, United Steelworkers of America, Local Union No. 8869, in this action to vacate an arbitrator's award. For the reasons given below, we affirm.
 
 I.
 
 2
 The parties entered into a collective bargaining agreement effective from November 1, 1982 through October 31, 1985, which provides that the company may discharge an employee only for "proven justifiable cause," "proper cause," and "just cause." Articles III, Sec. 7a, XII, XIV, Sec. 5. If a discharge dispute is not resolved through the grievance procedure, it is to be submitted to arbitration. The agreement provides that the arbitrator may "apply his interpretation [of the agreement] to the particular grievance" and that the "arbitrator's decision shall be final and binding on the company, the union, and the employee(s) involved." Article IX, Sec. 2.
 
 
 3
 Darrell Brinker, a union member, started to work with the company on June 28, 1980. The company is a manufacturer of vinyl siding and accessories headquartered in West Salem, Ohio. Brinker worked in the company's tool and die department. He was discharged on January 5, 1984, for possession and use of marijuana. A grievance was filed in connection with the discharge and, when not resolved, the matter was submitted to arbitration. Arbitrator Thomas Letson was mutually selected by the company and the union. He conducted an arbitration hearing on October 11, 1984. Neither party now disputes the findings of fact by the arbitrator.
 
 
 4
 The arbitrator found that during the afternoon shift on January 3, 1984, the extrusion foreman, James Fagin, Jr., entered the tool and die room and noticed Darrell Brinker standing in an alcove. Fagin observed Brinker holding a pair of needle-nosed pliers to his lips. There was a glow visible at the tip of the pliers. Fagin approached Brinker and asked what he was doing, but Brinker did not reply. Fagin asked Brinker to step aside and when he did, a portion of a marijuana cigarette was found and recovered from the spot. Fagin took the remains of the cigarette and Brinker's needle-nosed pliers and reported the incident to the plant supervisor. Brinker was thereafter relieved of his duties and sent home. After management personnel reviewed the statements of this incident, Brinker was discharged. Chemical analysis indicated traces of marijuana on the pliers and that, in fact, the cigarette did contain marijuana. The arbitrator stated that he was persuaded beyond a reasonable doubt that Brinker was smoking marijuana. However, the arbitrator also concluded that the single, isolated act of smoking "was not just cause for discharge," although it could be cause for other, less severe discipline. Accordingly, the arbitrator entered the following award:
 
 
 5
 The Grievance is sustained in part, and denied in part.
 
 
 6
 The discharge is set aside; the Grievant is to be returned to work at the beginning of the next work week following receipt of this award. No back pay is awarded and seniority shall not accumulate for the time between January 5, 1984 and the date of reemployment.
 
 
 7
 (App. 37.) The date of reemployment was to be November 5, 1984, thus resulting in a modification of the discharge to a ten-month suspension.
 
 
 8
 The company then filed this action in the district court below, requesting that the arbitration award be vacated, pursuant to 9 U.S.C. Sec. 10(d). The defendants filed a counterclaim for enforcement of the award, pursuant to 9 U.S.C. Sec. 9. The matter was submitted to Judge Bell on cross-motions for summary judgment. Judge Bell entered an opinion and order on August 16, 1985, granting summary judgment in favor of the defendant and ordering this case dismissed.
 
 II.
 
 9
 The company does not dispute that the Federal Arbitration Act, 9 U.S.C. Sec. 10(a-d), provides for vacation of an arbitration award only for one of four grounds.[1] Plaintiff alleges that in the present case the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. Specifically, the company contends that the award violates and contravenes well-defined and dominant federal and state public policies regarding drug use. Plaintiff also asserts that the award is arbitrary and irrational.
 
 
 10
 Under the circumstances presented here, our review of the district court's judgment is a two-step process. The Supreme Court laid out that process and the standards of review for us in W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 764-66 (1983):
 
 
 11
 The sole issue before the Court is whether the [arbitrator's] award should be enforced, Under well-established standards for the review of labor arbitration awards, a federal court may not overrule an arbitrator's decision simply because the court believes its own interpretation of the contract would the better one. Steelworkers v. Enterprise Wheel & Car Corp., 363-U.S. 593, 596 include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement, It id. at 597, a court is bound to enforce the award and is not entitled to review the merits of the contract dispute, ....
 
 
 12
 ... Again, although conceivably we could reach a different result were we to interpret the contract ourselves, we cannot say that the award does not draw its essence from the collective bargaining agreement.
 
 
 13
 As with any contract, however, a court may not enforce a collective-bargaining agreement that is contrary to public policy. See Hurd v. Hodge, 334 U.S. 24, 34-35 (1948). [The arbitrator's] view of his own jurisdiction precluded his consideration of this question and, in any event, the question of public policy is ultimately one for resolution by the courts.... If the contract as interpreted by [the arbitrator] violates some explicit public policy, we are obliged to refrain from enforcing it.... Such a public policy, however, must be well defined and dominant, and is to be ascertained "by reference to the laws and legal precedents and not from any general considerations of supposed public interests." Muschany v. United States, 324 U.S. 49, 66 (1945).
 
 
 14
 (Footnote omitted, emphasis added.) Thus, we must first deter mine whether the arbitrator's decision draws its essence from the contract. If it does not, the analysis stops there and the award must be vacated, as plaintiff requests. If the award does draw its essence from the collective-bargaining agreement, it still cannot be enforced, as defendants' counterclaim requests, if the agreement, as interpreted by the arbitrator, would violate public policy.
 
 
 15
 Both the plaintiff and defendants, as well as the district court, merge these two steps. The importance of the distinction lies in the respective standards of review. As the Supreme Court makes clear, a court cannot overrule an arbitrator because its interpretation of the contract is different from his. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597 (1960). This court in General Telephone Co. v. Communication Workers, 648 F.2d 452 (6th Cir. 1981), stated:
 
 
 16
 [I]n interpreting a collective bargaining agreement and in fashioning a remedy in accordance with that agreement, an arbitrator is given broad latitude and discretion. His remedy need not be specifically authorized by the agreement. And so long as his remedy represents a fair solution to the dispute, the remedy awarded should be affirmed.
 
 
 17
 This is a very deferential standard of review and is the standard properly applied in this case by the district court and this court as to the arbitrator's interpretation of the contract. In this case, the interpretation called for was whether the facts as found by the arbitrator constituted "just cause" for discharge of Brinker. However, the second issue--whether a collective bargaining agreement which allows reinstatement of Brinker violates public policy and should not be enforced--is a question for the courts. The arbitrator could not and did not consider the question of whether reinstatement of Brinker violates public policy. That issue was properly first considered by the district court below and, as a question of law, is to be reviewed de novo by this court.
 
 III.
 
 18
 The arbitrator stated that the use of marijuana in the work place is a serious and dischargeable offense even without written work rules proscribing this activity. However, he found that the facts in this case do not warrant discharge. He found that the employee engaged in only one incident of smoking marijuana, and that he had no prior discipline and a good work record.[2] The arbitrator also found, and it is undisputed, that there were no company rules prohibiting this conduct. Further, there was no evidence presented that the smoking created a hazardous situation for the employee, other employees, or other third parties. The arbitrator also found that there was a lack of confrontation and due process in the beginning stages of the grievance procedure. Finally, there was some discussion at the hearing as to alleged inconsistencies by the company in its past handling of marijuana smoking, but that issue was not resolved by the arbitrator.
 
 
 19
 The company asserts that the arbitration award is arbitrary and fundamentally irrational because the arbitrator found that smoking marijuana on company premises is is a serious and dischargeable offense in the industrial setting," but then went on to order Brinker reinstated. As pointed out by the district court, however, the arbitrator did not reinstate Brinker without serious discipline. A ten-month suspension without pay and with loss of seniority is no minor punishment. Both the arbitrator and the district court pointed out that a company ought to have clear work rules dictating its policy as to the use of drugs and alcohol. Without such rules, an arbitrator can only do what Mr. Letson did--make factual findings and apply the contract as he interprets it. Essentially, plaintiff is dissatisfied with the arbitrator's decision and wants this court to substitute its judgment for that of the arbitrator. We find that the arbitrator drew his conclusion from the essence of the bargaining agreement and did not modify or amend its provisions. We may or may not agree with the award, but we may not substitute our judgment for the arbitrator's. Having found that the arbitrator did not exceed the scope of his authority, we must proceed to the second issue, that of enforcement, about which plaintiff is most concerned.
 
 IV.
 
 20
 Most of plaintiff's argument on appeal is directed to the public policy position it asserts. The company first discusses safety and cites a number of cases in which arbitration awards were vacated on the basis of public policy. As pointed out by the district court, a:11 of these cases are factually distinguishable from the present one and involve clearly defined public policy areas. World Airways Inc. v. Int'l Brotherhood of Teamsters Airline Division, 579 F.2d 800 (9th Cir. 1978), involved a case of discharge of an airline pilot who had made numerous errors in judgment while flying. There was clearly a public safety policy involved in that case.[3] Amalgamated Meat Cutters and Butcher Workmen Local Union 540 v. Great Western Food Co., 712 F.2d 122 (5th Cir. 1983), was a case in which a truck driver admitted drinking alcohol while on the road, Again, a clearly defined public policy was at stake, In United Postal Service v. American Postal Worker Union, 736 F.2d 822 (1st Cir. 1984), the issue was completely different from the present one. There an employee of the Postal Service had been convicted of embezzlement and the arbitrator had ordered him reinstated to a different position.[4] There was no safety issue involved.
 
 
 21
 Finally, plaintiff relies heavily upon Misco, Inc. v. United Paperworkers Int'l Union, 768 F.2d 739 (5th Cir. 1985), a split decision on enforcement which plaintiff calls "controlling authority for the public policy arguments raised in this case." After careful review, we do not find Misco to be controlling authority. Misco involved a very different situation than that presented here. A written company rule, promulgated pursuant to a collective bargaining provision permitting the company to impose rules, provided that possession of or use of drugs on plant premises was cause for discharge, leading the court to conclude that where the arbitrator did not uphold enforcement of this provision, the award did not draw its essence from the agreement. Further, the court seemed very concerned with the fact that the arbitrator's understanding of the law and his con duct of the hearing was inadequate. Finally, the Misco court did go on to find a public policy at stake (a step which it need not have taken), but it was "one against the operation of dangerous machinery by persons under the influence of drugs or alcohol." Id. at 743.[5]
 
 
 22
 The public policy asserted by plaintiff here is not so clearly defined. The company acknowledges that neither the district court nor this court can establish a per se ruling that public policy requires that anyone caught smoking marijuana at his work place is subject to discharge in all cases. Plaintiff argues that such behavior in an industrial setting is different, but did not offer any evidence to the arbitrator nor has it offered any specifics here, other than general allegations, as to the safety risk posed by an employee in a job such as Brinker's smoking one marijuana cigarette.[6] The company did not offer any proof at the arbitration hearing or to the district court or this Court that Brinker was operating dangerous machinery on January 3, 1984, or at any other prior time, as the employee had been in Micro.[7] No other allegations have been made by the company of potential danger to Brinker, his fellow employees, or any other third parties.
 
 
 23
 Plaintiff's other public policy arguments seem to be based on the mere fact that possession of marijuana is illegal, but plaintiff does not address the fact that possession of one marijuana cigarette in Ohio is now a minor misdemeanor, and arrest or conviction does not constitute a criminal record. Ohio Rev. Code Sec. 2925.11(c)(3)(D). We do not find that the mere illegality of the possession of marijuana leads to the conclusion that a collective bargaining agreement which allows reinstatement of Brinker, given the facts found by the arbitrator, violates a well defined and dominant public policy.
 
 
 24
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Sec. 10. Same; vacation; grounds; rehearing
 In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration--
 (a) Where the award was procured by corruption, fraud, or undue means.
 (b) Where there was evident partiality or corruption in the arbitrators, or either of them.
 (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
 (d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
 The Sixth Circuit has found the Act applicable to labor arbitration awards. See National Post Office v. U.S. Postal Service, 751 F.2d 834, 840 (6th Cir.1985).
 
 
 [2]
 Plaintiff asserts that Brinker did not have a good work record in that on June 10, 1982, Brinker was discharged by the company for excessive absenteeism and was only reinstated pursuant to the terms of a grievance settlement, providing for a disciplinary suspension and a probation period. However, it does not seem that the company presented any evidence about this assertion to the arbitrator, and is not now disputing the factual findings of the arbitrator
 
 
 [3]
 Further, the court in World Airways did not even consider a public policy argument. It did not get to that second step because it vacated the arbitrator's award as beyond the scope of his authority at the first step of the analysis
 
 
 [4]
 The court went on to the second step and found that "it violates public policy to force the Postal Service to reinstate an employee who was recently convicted of directly violating his fiduciary duties through the embezzlement of a large sum of money from it." United Postal Service, 736 F.2d at 826
 
 
 [5]
 The court had first found:
 Cooper's job was to operate an unusually dangerous machine called a slitter-rewinder, which cuts rolling coils of paper by means of sharp blades and which had caused numerous injuries. Operating such a machine with judgment and coordination impaired by substance abuse creates a safety hazard to the operator and to other employees. Cooper had been twice reprimanded for shoddy, inattentive work--the very type the employer believed might be attributable to such abuse--the last time on the day before the events leading to his discharge.
 Misco, 768 F.2d at 740-741. These kind of specific facts were not presented to the arbitrator in the present case, nor have they been alleged in this action.
 
 
 [6]
 Plaintiff states that Brinker's duties involved the cleaning, rewiring and adjusting of extrusion dies and other related heavy machinery. Brinker evidently never operated this machinery
 
 
 [7]
 Thus, the present case does not present us with the public policy issue faced by the Misco court, and we need not address whether reinstatement would be per se improper where an employee uses drugs while operating dangerous equipment or machinery