**GULF COAST INDUSTRIAL WORKERS**

v.

**EXXON CHEMICAL AMERICAS.**

**Civ. A. No. G–94–069.**

United States District Court,
S.D. Texas,
Galveston Division.

Sept. 21, 1994.

Sharon D. Groth, Gulf Coast Indus. Workers Union, Baytown, TX, for plaintiff.

Stephen William Smith, Fulbright & Jaworski, Houston, TX, for defendant.

### ORDER GRANTING AND DENYING CROSS–MOTIONS FOR SUMMARY JUDGMENT

KENT, District Judge.

This is a review of an arbitration proceeding in which Russell Paull, an employee of Exxon Chemical Americas ("Exxon") was reinstated to his employment with Exxon after having been discharged by the Defendant for violating the Company's Alcohol and Drug Use Policy. Mr. Paull's union, Gulf Coast Industrial Workers ("GCIW") has brought suit to enforce the arbitrator's decision to reinstate Mr. Paull in a non-safety position. Exxon has filed a counterclaim to vacate the arbitration award on the grounds that the arbitrator exceeded his authority in reinstating Mr. Paull. Before the Court are cross-motions by both parties for summary judgment. The Defendant's motion is hereby

**GRANTED,** and the Plaintiff's motion is **DE-NIED.**

### Background

Mr. Paull was originally employed by Exxon on January 22, 1979 as a process technician at Exxon's Baytown Chemical Plant in Baytown, Texas. On November 22, 1992, Mr. Paull was scheduled to "slide" to the position of First–Line Supervisor in the Chemical Extraction Area of the plant.[1] The arbitrator determined that this is a critical position in the plant, and its duties are safety-sensitive (Arb. Award, at 7). Violation of the appropriate safety standards could result in loss of life and serious damage to the local environment and property. Id.

When Mr. Paull arrived at work at 6:00 P.M. of November 22, 1992 to relieve Mr. Watts, the latter smelled alcohol on Mr. Paull's breath and told him that under the company's Alcohol and Drug Use Policy there was reasonable cause for an alcohol test. Despite Mr. Paull's objection that he had only drunk several bottles of non-alcoholic beer, Mr. Watts and a Union representative accompanied Mr. Paull to the San Jacinto Hospital, where a blood test consisting of a gas chromatography/mass spectroscopy was taken. Mr. Paull was placed on suspension pending the outcome of the blood test.

On December 1, 1992, Exxon learned that the test results showed that Mr. Paull had a blood alcohol level of .043% at the time of the incident, somewhat above the .040% level all parties have stipulated to as the company's threshold for testing positive for alcohol. On learning of the test results, Mr. Paull admitted that he had actually drunk four bottles of regular beer before reporting to work on November 22. Mr. Paull was discharged on December 1, 1992 for violating Exxon's alcohol and Drug Use Policy[2] and Alcohol Use Guidelines.[3]

All parties agree that relations between Exxon, its employees, and GCIW are controlled by the Collective Bargaining Agreement ("the CBA") that became effective on April 15, 1991. Pursuant to that agreement, the Union notified Exxon of its intent to arbitrate Mr. Paull's discharge, and a hearing of the grievance was heard on July 27, 1993 before Arbitrator John F. Caraway in Baytown, Texas. The sole question before the arbitrator was, "Did the Company have just cause to discharge Mr. Paull effective December 1, 1992 for violation of the Company's Alcohol and Drug Use Policy? If not, what is the appropriate remedy." (Arb. Award, at 5). On December 15, 1993, Mr. Caraway ruled that Mr. Paull worked in a highly safety-sensitive position in the plant and that he had both violated Exxon's Alcohol and Drug Use Policy and lied to his supervisors about his behavior. Nevertheless, the arbitrator determined that Exxon's policy does not mandate automatic termination for a first offense and that in light of Mr. Paull's excellent work record[4], he should be reinstated by Exxon to a non-safety position. Both Exxon and GCIW subsequently filed their respective suits to have this Court review the arbitrator's award.

### Standard of Review and Analysis

Summary judgment is appropriate only when no issues of material fact exist,

---

1. "Sliding" is a process whereby a non-supervisory hourly employee assumes supervisory responsibilities on a temporary basis.

2. Exxon's Alcohol and Drug Use Policy states:

    Exxon may conduct unannounced searches for drugs and alcohol on owned and controlled property. The corporation may also require employees to submit a medical evaluation or alcohol and drug testing [sic] where cause exist [sic] to suspect alcohol or drug use ... A positive test result or refusal to submit to a drug or alcohol test is grounds for disciplinary action, including termination.
    (Defendant's Brief in Support of Summary Judgment, at 8).

3. The Baytown Chemical Plant's Alcohol and Controlled Substance Guidelines state:

    The Company has the right to require employees to submit to medical evaluation or alcohol and drug testing where reasonable cause exists to suspect alcohol or controlled substance misuse. A positive test result or refusal to submit to testing is grounds for disciplinary action, including termination of employment.
    Id.

4. Evidence before the arbitrator established that Mr. Paull had worked for Exxon for fourteen years and that he had received a number of citations by the company for good work performance.

and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Walker v. Sears Roebuck*, 853 F.2d 355, 358–59 (5th Cir.1988). A court must draw all reasonable inferences of fact in favor of the party opposing the motion. *Walker, supra,* 853 F.2d at 358. In this case, both parties have stipulated to all material facts, and the only question before this Court is a purely legal one: Did the arbitrator exceed his authority in reinstating Mr. Paull to a non-safety position at Exxon?

■■■ In reaching its decision on this matter, the Court is aware of its limited power to review an arbitration award. District courts have jurisdiction to review an arbitration proceeding pursuant to 29 U.S.C. § 185. Such review, however, is highly limited in its scope. An arbitrator's award will not be disturbed if the decision "draws its essence from the collective bargaining agreement" and is not based on the arbitrator's "own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). It is well established that a reviewing court may not reconsider the merits of a case, even if the parties involved allege that the decision rests on an incorrect version of the facts:

> The courts ... have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in a written instrument which will support the claim.

*United Paperworkers International Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 369, 98 L.Ed.2d 286 (1987) (quoting *United Steelworkers, supra,* 363 U.S. at 568, 80 S.Ct. at 1346). As long as the arbitrator has acted within the scope of his authority and is "even arguably construing or applying the contract," a Court may not reject an arbitrator's interpretation of a contract, even if the Court is convinced that a serious error has been committed. *Id.* 484 U.S. at 38, 108 S.Ct. at 371.

■■ Courts are free, however, "to scrutinize the award to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of the collective bargaining agreement." *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n.,* 889 F.2d 599, 602 (5th Cir.1989), *cert. denied,* 498 U.S. 853, 111 S.Ct. 148, 112 L.Ed.2d 114 (1990). In particular, an arbitrator may not ignore the plain language of a collective bargaining agreement, *Interstate Brands Corp., Butternut Bread Div. v. Chauffeurs, Teamsters, Warehousemen and Helpers Local Union No. 135,* 909 F.2d 885, 889 (6th Cir.1990), *cert. denied,* 499 U.S. 905, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991), and in the rare case in which an arbitrator has ignored such plain language, a reviewing court may vacate an award.

This Court believes that it has been presented here with just such a case. Article 15 of the CBA governs the authority of the arbitrator, specifically stating that the arbitrator "shall have the authority only to interpret and apply the provisions of this Agreement and *shall not have authority to alter or add to it in any way."* (CBA Art. 15, at 16) (emphasis added). Article 26 of the CBA specifically confers on Exxon the exclusive right to discharge employees for "just cause." (CBA Art. 26, at 21). Finally, Schedule C of the CBA provides that an employee may be discharged without notice for the "[i]ntroduction, possession, or use of intoxicating liquors on the property of the Company, or proceeding to work under the influence of liquor." (CBA, Schedule C, at 58).

■■ The Plaintiff has argued that Exxon's Alcohol and Drug Use Policy provides for a range of disciplinary measures (Plaintiff's Reply Brief, Instrument # 14, at 3) and that the arbitrator acted within his authority when he determined that reinstatement was proper because the policy did not *mandate* discharge for a first offense. (Arb. Award, at 17). Were this *all* that the CBA says, this Court might be inclined to agree with the Plaintiff, readily conceding that discharge after fourteen years of loyal service is a draconian penalty. The Court is highly sensitive to the fact that an arbitrator is fully allowed to bring his own judgment to bear in reaching a fair solution and that "this is especially true when it comes to formulating remedies." *Delta Queen, supra,* 889 F.2d at 41 (empha-

sis omitted). Indeed, a long (and somewhat varied) line of cases has allowed arbitrators to interpret clauses providing for the immediate discharge of an employee who commits certain acts as, in fact, allowing their reinstatement.

Thus, an employee who was found drinking on the job was reinstated to his position even though the governing Collective Bargaining Agreement between the employer and union clearly provided for immediate discharge when an employee was discovered drinking. *Super Tire Engineering Co. v. Teamsters Local Union No. 676,* 721 F.2d 121, (3rd Cir.1983), *cert. denied,* 469 U.S. 817, 105 S.Ct. 83, 83 L.Ed.2d 31 (1984). The Third Circuit declared that the arbitrator was free to read the "immediate discharge" clause in light of a preceding clause that provided for discussions between management and the union before a discharge could occur. Specifically, the "immediate discharge" clause failed to equate drinking with "just cause":

> Thus, the arbitrator might have found that all discharges are subject to the "just clause" provision ... and that consequently the contract authorized him to apply all the surrounding facts and circumstances to his interpretation of the contract to determine whether or not the discharge is proper.

*Id.* at 124. The Court found that, in the absence of an unambiguous provision in the contract, "just cause" comprises a "mix of factors" that the arbitrator was free to determine in his best judgment. *Id.* at 125.

No such ambiguity exists in the present case. Article 26 of the CBA states that Exxon "shall have the right to discipline and discharge employees for *just cause. The commission of the offenses listed in Schedule C shall be just cause* to render an employee liable to discharge on first offense." (CBA Art. 26, at 21) (emphasis added). As stated above, Schedule C specifically lists "proceeding to work under the influence of liquor" as a dischargeable offense. (CBA Art. 26, at 58). Thus, by its very terms, the CBA defines what "just cause" is and gives Exxon

the authority to discharge an employee for committing one of the Schedule C offenses under the "just cause" banner. Even under the most expansive theory of semantics, no interpretation of this language is required; it is plain and unambiguous on its face.

This is not, therefore, a case in which an arbitrator is called upon to interpret a contract, a power explicitly granted to him under the CBA.[5] Likewise, it is not a case in which the arbitrator is called on to give meaning to the words of a contract. *Misco, supra,* 484 U.S. at 41, 108 S.Ct. at 372. Rather, it is one in which "the arbitrator [has] ignore[d] the plain language of the contract" and created a remedy that "simply reflect[s] the arbitrator's own notions of industrial justice." *Id.* In the face of the contract's unambiguous definition of "just cause" and the equally plain inclusion of the Schedule C offenses, it cannot be said that the arbitrator even "arguably constru[ed] or appl[ied] the contract." *Id.* In answering the question presented to him ("Did the Company have just cause to discharge Mr. Paull ...?), the arbitrator need only have looked at the explicit language of Article 26 of the CBA to have found the immediate answer: yes. Thus, when the arbitrator found that Mr. Paull violated Exxon's Alcohol and Drug Use Policy and the Alcohol Use Guidelines—that Mr. Paull, that is, violated an offense under Section C of the CBA—the arbitrator had no authority to alter Exxon's right to discharge its employee immediately, even though what he tried to achieve was, frankly, a more "just" result.

In saying this, the Court does not rule on any finding of fact by the arbitrator or contest any interpretation he made of the Alcohol and Drug Use Policy. This Court simply points to the plain language of an agreement that had been *pre-determined* through negotiations between GCIW and Exxon. When an employee is a member of a Union which submits to a collective bargaining agreement, the agreement defines the rights and rules that govern relations between the parties, and an arbitrator may not

**5.** Article 15 of the CBA states that the arbitrator "shall have the authority only to interpret and apply the provisions of this Agreement and *shall not have authority to alter or add to it in any way.*" (CBA, Art. 15, at 16).

make additions to those negotiated rules. *Exxon Corp. v. Exxon Employees' Federation of Texas*, CA 3:93–CV–2233–R (N.D.Tex. July 27, 1994), at 8. As the First Circuit has written concerning a similar violation of a collective bargaining agreement:

> Here . . . the company and the union negotiated and incorporated into the collective bargaining agreement the disciplinary rules and the resulting penalties for violations of these rules. Nothing is left to the arbitrator's judgment except determining whether the rules are violated. . . . It is not a question of a strained interpretation by the arbitrator with which we might agree or disagree, but rather a reading of the plain language of the contract which removes from the arbitrator the authority to determine a remedy once [he] concludes that a certain rule has been breached.

*S.D. Warren Co. v. United Paperworkers' Int'l.*, 845 F.2d 3, 8 (1st Cir.), *cert. denied*, 488 U.S. 992, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988).

The Fifth Circuit has been very clear that trial courts are free to examine arbitration awards to ensure that the arbitrator acted in conformity with the jurisdictional prerequisites of a collective bargaining agreement and may vacate an award that exceeds contractual authority. *Container Prods., Inc. v. United Steelworkers of Am.*, 873 F.2d 818, 820 (5th Cir.1989). "[T]he rule in this circuit, and the emerging trend among other courts of appeals, is that arbitral action contrary to express contractual provisions will not be respected." *Delta Queen, supra*, 889 F.2d at 604. Accordingly, when the arbitrator in this case ignored the plain-language definition of what constituted "just cause" for hiring in answering the question before him, he ex-

ceeded his jurisdictional authority under the collective bargaining agreement. His ruling was, therefore, an *ultra vires* act which this Court now vacates.[6]

█ Exxon also argues as a second ground for decision that the arbitrator's award should be vacated because, despite the fact that the arbitrator failed to state whether he did or did not find "just cause" for Mr. Paull's discharge, a proper reading of the arbitrator's award shows that he *implicitly* found just cause for termination. Consequently, Exxon argues, the arbitrator had no authority to fashion his own remedy once the first half of the question submitted to him ("Did the Company have just cause to discharge Mr. Paull ...") was implicitly answered in the affirmative. This Court agrees with Exxon's contention.

The Fifth Circuit has clearly held on several occasions that an arbitrator's award need not explicitly state that an employer had just cause to discharge an employee when the arbitration decision as a whole implicitly finds that just cause was present. The phrase "just cause"

> carries no talismanic significance in labor jurisprudence. It is simply a term of art that defines the many unrelated, independent acts that serve as grounds for employee discipline under the [collective bargaining] agreement. If a collective bargaining agreement defines "proper cause" to include a nonexhaustive list of offenses, an arbitrator cannot ignore the natural consequence of his finding that a listed offense was committed.

*Delta Queen, supra*, 889 F.2d at 604–05. In *Delta Queen*, for example, the binding collective bargaining agreement provided that a merchant-marine officer could be discharged

---

**6.** Much of the difficulty posed by this case seems to stem from the fact that Exxon failed to raise the binding nature of the CBA to the arbitrator in a clear-cut fashion. In its brief to the arbitrator, Exxon merely stated that "the Company need not establish that discharge is an appropriate penalty since that is already settled by the Collective Bargaining Agreement...." Defendant's Brief in Support of Summary Judgment, Instrument # 12, Section 1, at 24. Thus, it was never clearly argued to the arbitrator that the CBA defines what "just cause" is, and the arbitrator's decision seems to have rested almost solely on the

Alcohol and Drug Use Policy and the Alcohol Use Guidelines. .

Nevertheless, neither party in this case contends that the CBA is not the controlling document that defines the arbitrator's authority. Both parties have submitted copies of the CBA to this Court, and it is clear that both Plaintiff and Defendant assume that the CBA defines the scope of the parties' rights. See Plaintiff's Memorandum in Support of Summary Judgment, Instrument # 10, at 3–7, 9–16; Defendant's Reply to Plaintiff's Motion for Summary Judgment, Instrument # 15.

only for "proper cause such as ... carelessness." *Id.* at 601. The arbitrator found that a ship's Captain had been "grossly careless" but failed to specifically mention that the employer had just cause to discharge him. Consequently, the arbitrator reinstated the Captain to his position in light of his excellent work history. *Id.* The Fifth Circuit upheld the District Court's vacatur of the arbitration award, stating that when the arbitrator found that an employee had committed an offense specifically named in the collective bargaining agreement, just cause is implicitly present, and the arbitrator has no authority to fashion his own remedy.[7]

These are precisely the facts in the instant case. The arbitrator found that Mr. Paull had a blood alcohol level higher than the .04% level defined as a positive test for alcohol by Exxon's policy and that Mr. Paull violated the Alcohol and Drug Use Policy. (Arb. Award, at 13–14). As stated above, Article 26 and Section C of the CBA explicitly state that "proceeding to work under the influence of liquor" is "just cause" for immediate dismissal. Thus, having found that Mr. Paull arrived at work with a positive level of blood alcohol, the arbitrator implicitly found that Exxon had just cause for terminating Mr. Paull's employment. Under the question presented to him, therefore, the arbitrator had no authority to fashion his own remedy once he affirmatively answered the first sentence as to just cause. *See E.I. DuPont de Nemours, supra,* 968 F.2d at 459 (stating that once that arbitrator implicitly finds just cause under a similar arbitration question, he is without further remedial authority). The Court thus finds that the arbitrator exceeded his authority in reinstating Mr. Paull to his employment with Exxon because, having decided that Mr. Paull violated an offense listed in Schedule C of the CBA, the arbitrator had no authority to fashion his own remedy.

Finally, the parties in this case vigorously debate the question of whether the arbitrator's decision to reinstate Mr. Paull violates a public policy mandating that employers provide a drug and alcohol-free ·workplace. Having decided this case on other grounds, the Court does not reach this issue. It should be pointed out, however, that the Defendant's reliance on *Gulf Coast Industrial Workers Union v. Exxon Co., U.S.A.,* 991 F.2d 244 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 441, 126 L.Ed.2d 375 (1993) is misplaced in this regard. In that case, the Circuit held that an arbitrator's decision to reinstate an employee who had tested positive for cocaine to his job as a process technician—the same job formerly held by Mr. Paull—violated public policy. Nevertheless, the facts of *Gulf Coast Industrial* are easily distinguished from the present case. The employee in that case had an ongoing addiction to·cocaine; he had been through rehabilitation; he had actively tried to conceal his relapse into drug use; and, importantly, he was reinstated to a safety-sensitive position. The Circuit found these facts to be "of the utmost importance" in finding that the employee's reinstatement violated public policy. *Id.* at 254. By contrast, there is no evidence that Mr. Paull's intoxication was anything more than an isolated incident, and he was reinstated to a non-safety position. If the Court is presented with a violation of public policy in this case, more complete argument on how Mr. Paull's reinstatement to a non-safety position violates such a policy is required. Moreover, the Plaintiff is encouraged to address this problem in the proper context of collective bargaining when that is next available.

\*     \*     \*     \*     \*     \*

For the reasons stated above, the Defendant's Motion for Summary Judgment is **GRANTED,** the Plaintiff's Motion for Summary Judgment is **DENIED,** and the arbitrator's award is **VACATED.** Furthermore, all other relief not specifically granted herein is **DENIED.** It is further **ORDERED** that the parties file no further pleadings on this issue in this Court, including motions to re-

---

**7.** "Thus, where an arbitrator fails to make an express finding of proper cause, he nevertheless will be so bound if he finds that the employee committed certain underlying acts that constitute proper cause under the collective bargaining agreement." *Id.* at 604. For further examples of the same legal conclusion based on highly similar facts, see *Container Prods., Inc. v. United Steelworkers of Am.,* 873 F.2d 818, 820 (5th Cir. 1989); *E.I. DuPont de Nemours and Co. v. Local 900 of the Int'l. Chemical Workers Union,* 968 F.2d 456 (5th Cir.1992).

consider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons stated in the Court's Order entered this date, the above-captioned action is hereby **DISMISSED WITH PREJUDICE.** Each party shall bear his or its own taxable costs and expenses incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**