**S.D. WARREN COMPANY, A DIVISION OF SCOTT PAPER COMPANY, Petitioner, Appellant,**

v.

**UNITED PAPERWORKERS' INTERNATIONAL UNION, AFL–CIO, LOCAL 1069, Respondent, Appellee.**

**No. 86–1405.**

United States Court of Appeals, First Circuit.

Submitted Feb. 3, 1988.

Decided April 21, 1988.

---

**4**

S. Mason Pratt, Jr. with whom Elizabeth S. Pearce and Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me., were on brief, for petitioner, appellant.

Stephen P. Sunenblick with whom Charles W. March and Sunenblick & Reben, Portland, Me., were on brief, for respondent, appellee.

Before CAMPBELL, Chief Judge, TORRUELLA, Circuit Judge, and PIERAS,[*] District Judge.

TORRUELLA, Circuit Judge.

After our opinion in this case, *S.D. Warren Co. v. United Paperworkers' International Union,* 815 F.2d 178 (1st Cir.1987) (*Warren I*), the Supreme Court of the United States decided *United Paperworkers International Union, AFL–CIO v.*

*Misco, Inc.,* — U.S. ——, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Thereafter, appellant's pending petition for a writ of certiorari was granted, our judgment was vacated, and the case was remanded to us for further consideration in light of that decision. — U.S. ——, 108 S.Ct. 497, 98 L.Ed.2d 496. It is thus incumbent upon us to determine whether our prior ruling should in any manner be altered by this recent case. In our view, although *Misco* may partially preempt *Warren I,* it does not affect its basic holding.

In *Misco* the employer and the union entered into a collective bargaining agreement in which they agreed to submit to arbitration any grievance that arose from the interpretation or application of its terms and made the arbitrator's decision final and binding upon the parties. The agreement further provided that the arbitrator's authority was limited to the interpretation and application of the terms contained in the agreement itself. In addition, the agreement reserved to management the right to establish, amend, and enforce "rules and regulations regulating the discipline or discharge of employees," and the procedures for imposing discipline, but these rules, after posting, were subject to be "ruled on by grievance and arbitration procedures as to fairness and necessity." *Id.* 108 S.Ct. at 367. One of the rules enacted by the employer provided as a cause for discharge bringing intoxicants, narcotics, or controlled substances on to plant property or consuming them there.[1] *Id.* at 367–68.

An employee suspected of drug-related activities was observed by police in an automobile with two other persons while the car was in the company's parking lot during working hours. After the two persons left, the police approached the car and found the employee in the back seat of the car. They detected marijuana smoke in the air and found a lighted marijuana cigarette

---

[*] Of the District of Puerto Rico, sitting by designation.

1.  The rule included the following as causes for discharge: "Bringing intoxicants, narcotics, or controlled substances into, or consuming intoxi-

cants, narcotics or controlled substances in the plant, or on plant premises. Reporting for duty under the influence of intoxicants, narcotics, or controlled substances." *Misco,* 108 S.Ct. at 368 n. 2.

in the front seat ashtray. Thereafter the police proceeded to search the employee's own car, where they found a plastic scales case as well as marijuana gleanings. On the basis of this later incident, the employee was arrested and charged with possession of marijuana, a charge to which he pleaded guilty.

The employer discharged the employee, asserting that his presence in the first car, in which the marijuana smoke and lighted marijuana cigarette were found, violated the company rule against having drugs on plant premises. At the time of this personnel action the employer was unaware of the incident or charges involving the employee's own car.

The employee filed a grievance protesting his discharge, and the matter proceeded to arbitration. At the hearing the issue stipulated to be decided by the arbitrator was whether the company had just cause to discharge the employee under the rule prohibiting possession of drugs on company premises, and " '[i]f not, what if any should be the remedy.' " *Id.* at 368.

In ruling that the employer lacked just cause to discharge the employee for possession of marijuana on company premises, the arbitrator excluded evidence regarding the marijuana found in the employee's own car. The arbitrator concluded that this evidence was irrelevant to the employee's discharge because the employer was unaware of the same at the time of the disciplinary action. The arbitrator then ruled that the employee's mere presence in the first vehicle was not sufficient evidence to establish that the employee was in possession of drugs on company premises.

The company challenged this ruling in district court, claiming that it was contrary to public policy, a contention with which that court agreed. The court of appeals affirmed, ruling that the arbitrator should have taken into consideration the evidence uncovered by the police in the employee's car. *See Misco v. United Paperworkers,* 768 F.2d 739, 742–43 (5th Cir.1985). In

light of such evidence the court of appeals concluded that public policy prevented enforcement of the arbitrator award. *Id.* at 743.

Although the Supreme Court granted a writ of certiorari "on the question of when courts may set aside arbitration awards as contravening public policy," *Misco,* 108 S.Ct. at 369, the parties argued in the alternative, and the Court also decided, the issue of whether the court of appeals had exceeded its limited authority to review an arbitrator's award. *Id.*

In reversing, the Supreme Court first attacked the court of appeals' review of the arbitrator's findings. Quoting extensively from the time-honored standards of the *Steelworkers Trilogy* [2] the Court reemphasized that it was "the arbitrator's view of the facts and of the meaning of the contract that [the parties had] agreed to accept," and that "[c]ourts [did] not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *Misco,* 108 S.Ct. at 370. The Court also ruled that "where it [was] contemplated that the arbitrator [would] determine remedies for contract violations that he [found], courts [had] no authority to disagree with his honest judgment in that respect." *Id.* at 371.

In applying these principles the Court concluded that the court of appeals had exceeded its authority in ruling, contrary to what was determined by the arbitrator, that the employee's presence in the first car was ample proof of violation of the rule against possession of narcotics on company premises. *Id.* It also held that the court of appeals had overextended itself in considering the rejected evidence that was found in the employee's car. *Id.*

On the question of the remedy, the Court ruled that although "[t]he parties, of course, may limit the discretion of the arbitrator in this respect," where "the parties stipulated that the issue before the arbitrator was whether there was 'just' cause for discharge, and the arbitrator, in the course

---

**2.** *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

of his opinion ... observed that [the rule in question] merely listed causes for discharge and did not expressly provide for immediate discharge," the court of appeals was obliged, "before disposing of the case on the ground that [the rule] had been violated and discharge was therefore proper ... [to] remand to the arbitrator for a definitive construction of the contract in this respect." *Id.* at 372–73.

The Court then went on to discuss the court of appeals' principal holding that "to reinstate a person who had brought drugs onto the property was contrary to public policy." *Id.* at 373. The Court ruled that such grounds were unavailable as a basis for "refusal to enforce an arbitrator's *interpretation* of [a collective bargaining contract unless] the contract as interpreted would violate 'some explicit public policy' that is well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (emphasis in the original; citations omitted). The Court concluded that no violation of such policy had been clearly shown. *Id.* at 374.

The factual background in *Warren I* differs from *Misco* on significant points.

In *Warren I*, as in *Misco*, the collective bargaining agreement provides for arbitration of grievances following informal conciliation attempts. Also, the scope of the arbitrator's authority is "concerned solely with the interpretation and/or application of the collective bargaining agreement," as to which "[t]he decision of the arbitrator shall be final and binding on the parties." The parties also agree that "the arbitrator shall have no power to render a decision which in any way modifies any provision of the agreement." However, in *Warren I* the management rights clause provides that "[t]he Company reserves the *sole* right to manage the business of the Company and to direct the working force." (emphasis supplied). This *sole* "right includes but is not limited to ... the right to ... discharge employees for proper cause...." More significantly, the parties specifically negotiated and agreed to the disciplinary rules to be applied in the plant. The negotiated rules were appended to the contract.

One of them, Mill Rule 7(a), stated as follows:

7. Causes for Discharge.... Violations of the following rules are considered causes for discharge: (a) Possession, use or sale on Mill property of ... marijuana....

As a result of a police undercover operation in the company's plant, twelve employees were discharged for violating Mill Rule 7(a). The union filed a grievance regarding three of these employees which eventually came before an arbitrator. The arbitrator "found to be proved beyond a reasonable doubt, that all three employees violated Mill Rule 7(a)." *S.D. Warren v. United Paperworkers Intern.*, 632 F.Supp. 463, 465 (D.Me.1986). The arbitrator, however, after rejecting the company's position that the plain meaning of the contract provided for immediate discharge for violation of Mill Rule 7(a), determined that the employees' discharges were not justified, and proceeded to substitute that penalty with one entailing suspension. *Id.* at 466. In so concluding, the arbitrator ruled that she had authority to substitute the penalty imposed by the company because there was ambiguity between Rule 7(a) and the management rights clause in that "the contract did not unequivocally state that the conduct listed in Mill Rule 7(a) was *proper* cause for discharge as required by the Management Rights and Seniority Provisions." *Id.* (emphasis in the original).

The employer challenged the award in district court on the basis that its enforcement would violate public policy and because it allegedly ignored the plain meaning of the agreement. The magistrate who initially ruled on this matter rejected the first argument but recommended vacation of the award on the second ground. *Id.* at 467.

The district court disagreed with the company on both grounds and refused to vacate the award. Relying on the advice of *United Steelworkers v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960), to the effect that arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpreta-

tion that covers the asserted dispute," the district court concluded that the arbitrator had authority to reduce the company's chosen penalty because of the alleged ambiguity between the rule and the management rights clause. *S.D. Warren Co.,* 632 F.Supp. at 467. As to the public policy argument, the court ruled, citing *W.R. Grace & Company v. Local Union 759,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983), that only where the contract as interpreted by the arbitrator violates some "explicit," "well defined and dominant" public policy exemplified by "laws and legal precedents" would a court be obligated to refrain from enforcing the award on public policy grounds. *S.D. Warren Co.,* 632 F.Supp. at 469. The district court found that the existence of state and federal laws which provide "only light penalties in connection with possession, furnishing, or distributing a small quantity of marijuana as in this case here," did not provide sufficient specificity for purpose of finding public policy violations, because these laws were directed to the public at large. *Id.* at 469–70.

We reversed the district court, ruling that the arbitrator had exceeded her contractual authority and that the award violated public policy. *Warren I,* 815 F.2d 178 (1st Cir.1987).[3]

We reaffirm our ruling that the arbitrator exceeded her contractual authority in overturning the employees' discharges in this case. We shall assume without deciding that *Misco* forecloses the alternate public policy grounds upon which we decided *Warren I.* But see *Iowa Electric Light & Power v. Local Union 204,* 834 F.2d 1424, 1428 (8th Cir.1987) (*Warren I* relied upon after *Misco* as basis for refusing to enforce arbitration award on public policy grounds).

It is, of course, beyond cavil that courts are not authorized to reconsider the merits of arbitration awards, even where errors of fact or misinterpretation of the facts appear from the face or record of those proceedings. *Misco,* 108 S.Ct. at 370:

Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decision of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. *Id.* at 370–71.

Contrary to *Misco,* in the present case there has been no attempt to set aside or undermine the arbitrator's findings of fact. On the basis of the undisputed facts relied upon in *Warren I,* the arbitrator "found that the grievants had violated Mill Rule 7(a)." *Warren I,* 815 F.2d at 180–81. In fact the arbitrator found that these violations were "proved beyond a reasonable doubt." *S.D. Warren,* 632 F.Supp. at 465.

However, established arbitration law does not stop with our previous recitation concerning arbitrators' findings of fact:

"The same is true of the arbitrator's interpretation of the contract.... [T]he parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract. So, too, *where it is contemplated that the arbitrator will determine remedies* for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect ... [A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision...."

*Misco,* 108 S.Ct. at 371 (emphasis supplied).

Notwithstanding this narrow review standard, one which we have long honored

---

**3.** Chief Judge Campbell filed a separate opinion, concluding that it was unnecessary for the court to reach the public policy issue. *Id.* at 187–88.

in this circuit, *see Bettencourt v. Boston Edison Company*, 560 F.2d 1045, 1050 (1st Cir.1977), we cannot enforce the award in this case because in it "the arbitrator [has] ignore[d] the plain language of the contract" and because the award fails to draw its "essence" therefrom and "simply reflect[s] the arbitrator's own notions of industrial justice." *Misco*, 108 S.Ct. at 371; *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362. In this case the unambiguous language of the management rights' contract and Mill Rule 7(a) do *not* "contemplate[ ] that the arbitrator determine remedies" for those violations. The remedies have been pre-determined for those violations.

Several factors lead us to this severe conclusion. Here, differently than in *Misco*, the company and the union negotiated and incorporated into the collective bargaining agreement the disciplinary rules and the resulting penalties for violations of these rules. Nothing is left to the arbitrator's judgment except determining whether the rules are violated. An uncomplicated reading of the contract reveals that management has the *sole* right to discharge employees for cause, the definition of which includes possession of marijuana on Mill property. It is not a question of a strained interpretation by the arbitrator with which we might agree or disagree, but rather a reading of the plain language of the contract which removes from the arbitrator the authority to determine a remedy once she concludes that a certain rule has been breached. The parties negotiated and agreed to the remedy for violations of Rule 7(a). Here the arbitrator found a violation of that rule by reason of the employee's possession of marijuana on mill property. The rule plainly states that such a violation is "cause for discharge." The management rights clause provides that the company "reserves the sole right to ... discharge employees for proper cause...." The arbitrator, himself, agreed "that arbitrators generally consider synonymous the language 'proper cause,' 'just cause,' or 'cause.'" App. to Brief for Appellee at

111. Therefore, the contract plainly states that the company has the sole right to discharge employees for the violation which admittedly occurred. In the face of the contract's unambiguous language to this effect, it cannot be said that the arbitrator even "arguably constru[ed] or appl[ied] the contract." The award altered the previously agreed penalty for this conduct. By substituting the arbitrator's own "brand of industrial justice" over that established in the contract, the arbitrator engaged in a proscribed modification of the agreement.

As stated in *Misco*, 108 S.Ct. at 371, if the parties do not pre-negotiate remedies, the arbitrator can fashion them as part of his decisional discretion. Were we to sustain that authority in this case, notwithstanding the pre-negotiation that took place, it would be the equivalent of our saying that the parties engaged in a meaningless act by negotiating the disciplinary rules and incorporating them into the collective bargaining agreement. We would be saying that the arbitrator retained the right to fashion remedies even when this *contractual* authority was not given by the parties. That is not the law. *Id.*

The award is not entitled to enforcement. *Reversed.*