EXXON CORPORATION, Plaintiff,

v.

ESSO WORKER'S UNION,
INC., Defendant.

Civil Action No. 92–12594–MLW.

United States District Court,
D. Massachusetts.

Sept. 16, 1996.

Robert Glass, Glass, Seigle & Liston, Boston, MA, for Exxon Company, U.S.A.

Nathan S. Paven, Paven & Norton, Quincy, MA, for Esso Workers's Union, Inc.

*MEMORANDUM AND ORDER*

WOLF, District Judge.

This action was brought by Exxon Corporation ("Exxon") to vacate an arbitration award which reinstated Albert Smith ("Smith") to his former position as driver of a petroleum tanker truck for plaintiff corporation. Exxon had discharged Smith after he was tested positive for cocaine use. Smith is

a member of defendant Esso Worker's Union, Inc. (the "Union"). Defendant moves for summary judgment and enforcement of the arbitrator's award. Plaintiff has also moved for summary judgment and seeks to have the award vacated. Both parties request awards of costs and reasonable attorneys' fees.

For the reasons set forth below, summary judgment for the defendant is being allowed and the arbitrator's award is being upheld. The parties' requests for costs and attorney's fees are each being denied.

## I.  FACTS

The undisputed facts include the following. As an employee of Exxon, Albert Smith was responsible for loading, driving, and unloading a five-axle tractor-trailer combination commercial vehicle which transported petroleum throughout New England, leaving from Exxon's fuel terminal in Everett, Massachusetts.

Pursuant to his employment, Smith was subject to Exxon's random drug testing procedures. On August 21, 1990, Smith reported for a drug test and tested positive for cocaine use. The test did not disclose when he had used the cocaine or indicate that he was then under its influence. On September 11, 1990, Exxon discharged Smith as a result of this positive test. The Union subsequently filed a grievance in protest of Smith's termination. The Union and Exxon were unable to resolve the matter through the grievance procedure and submitted the matter to arbitration pursuant to the collective bargaining agreement ("CBA") in existence between the two parties. *See* Complaint, Ex. A.

Section 11.01 of the CBA provided that "[t]he Company shall post a list of offenses which it deems serious, and may change these from time to time. However, before making any changes, it will discuss them with the Union." Section 11.02 of the CBA stated:

If an employee commits an offense on the Posted List, the Company *may* discharge him *or* otherwise discipline him.

If an employee is guilty of unsatisfactory conduct or unsatisfactory work perfor-

mance (not referred to on the Posted List), the Company will not discharge or suspend him unless within the preceding six months the employee has received a written warning notice or has been otherwise disciplined following the same or a different type of unsatisfactory conduct or work performance, or has committed an offense on the Posted List.

In the event any employee believes that suspension or discharge has been without *just cause,* such grievance may be handled through the grievance and arbitration procedure hereinbefore set forth. In the event of a reinstatement, back pay shall be given for all the time lost or the period of reinstatement. (emphasis added).

The term "may", appearing in ¶ 1 of Section 11.02 is specifically defined in the Dictionary of terms in the CBA as meaning "has a right to." CBA, Section 14.05. Therefore, Section 11.02 puts an employee on notice that if he commits an offense on the Posted List, the Company has the right to discharge or otherwise discipline him, subject to his right to assert that if he has been discharged or suspended, there was not good cause for the imposition of that penalty.

Exxon's list of Posted Offenses, which was contained in the appendix to the CBA, stated that: "An employee who commits one of the following offenses may be terminated *or* otherwise disciplined without notice." CBA, p. 72 (emphasis added). Posted Offense 6.a prohibited the following: "Being under the influence of an alcoholic beverage or drug on Company time or property. Testing positive on a drug test or refusal to submit to a drug test." As discussed below, it is significant that this provision does not expressly state that a positive drug test is "just cause" for dismissal or that discharge is the only penalty for a positive drug test.

At arbitration, the parties stipulated that the issue to be decided by the arbitrator was: "Did the Company have just cause to discharge Albert Smith on or about September 11th, 1990?" *Esso Worker's Union, Inc. v. Exxon Company,* AAA Voluntary Labor Arbitration Tribunal, No. 11 300 00060 91 (1992) (Cooper, Arb.) (the "Arbitrator's Award"), p. 1 (*see* Complaint, Ex. D). The arbitrator

first found that "[the laboratory] tested the urine sample properly and that the test showed positive for the presence of cocaine." *Id.* at 6. Despite this finding, the arbitrator rejected the Company's argument that Smith's termination was proper. The Arbitrator reasoned:

> In this case the Company's actions were automatic: if an employee in a designated position tests positive, s/he is terminated. The Company's presumption is that the employee is a danger to the public safety and the only remedy is to excise that danger. The Company's self-imposed narrowness in its choice of remedy fails to meet the just cause standard. There was no evidence that Company drivers had any record of dangerous driving due to ingesting illicit drugs. In the case of Smith, there was no record of any discipline or any signs or indications of a drug-related problem during his nearly twenty years with the Company.

*Id.* at 7. The arbitrator pointed to the fact that under 49 C.F.R. § 391.117(b), a driver is disqualified for one year for testing positive for a controlled substance only "when the driver has been involved in a fatal accident." *Id.* at 8. The arbitrator concluded that Exxon did not have just cause to discharge Smith. Rather, he found that Exxon had just cause to suspend Smith for two months and to require him to pass a drug test on his return to work. *Id.* at 8–9.

Exxon seeks to vacate the arbitrator's award on two grounds. First, Exxon claims that the arbitrator exceeded his authority in reinstating Smith. Second, Exxon claims that the arbitrator's award contravened public policy.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Fed.R.Civ.P. 56 provides that summary judgment shall be granted when "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering a summary judgment motion, a court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In the present case, there remains no genuine issue of material fact. All issues of material fact have been resolved by the arbitrator and the parties have accepted these findings in their cross-motions for summary judgment. The parties acceptance of the facts found by the arbitrator is consistent with the principle that "[t]o resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them." *United Paperworkers International Union, AFL–CIO v. Misco,* 484 U.S. 29, 38, 108 S.Ct. 364, 370–71, 98 L.Ed.2d 286 (1987). Accordingly, this case is ripe for summary judgment.

### B. *Standard of Review for Arbitration Awards*

It is well settled that federal courts have very limited authority to review arbitrators' awards. The Supreme Court has made it clear that, "[t]he courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misrepresentation of the contract." *Misco,* 484 U.S. at 36, 108 S.Ct. at 370. In *Misco,* the Court went on to say that "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced that he committed serious error does not suffice to overturn his decision." *Id.* at 38, 108 S.Ct. at 371. In essence, "matters of contract interpretation are typically up to the arbitrator, not the courts." *Berklee College of Music v. Local 4412,* 858 F.2d 31, 32 (1st Cir.1988) However, a court is not obligated to enforce an award when "the arbitrator [has] ignored the plain language of the contract" or the award fails to "draw its essence from the contract," but rather "simply reflect[s] the arbitrator's own notions of industrial justice." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371. The

Court of Appeals for the First Circuit has formulated a similar test; namely whether the arbitrator's reasoning was "so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling." *Bettencourt v. Boston Edison Company*, 560 F.2d 1045, 1050 (1st Cir.1977). Another circuit has expressed the same concept in different terms: "[A]lthough [the arbitrator] may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions." *Detroit Coil v. International Association of Machinists*, 594 F.2d 575, 579 (6th Cir.1979) *cert. denied*, 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979).

### C. The Arbitrator Did Not Exceed His Authority

■ Exxon claims that the arbitrator exceeded his authority by ignoring Exxon's express right to discharge an employee for committing a Posted Offense. Exxon disputes the arbitrator's authority to review its decision concerning the appropriate sanction in drug cases, alleging that there is no language in Section 11.02 of the CBA to suggest that this power was bargained for or agreed upon.

Exxon places primary reliance on the decision by the Court of Appeals for the First Circuit in *S.D. Warren v. Local 1069, United Paperworkers' Int'l. Union*, 815 F.2d 178 (1st Cir.1987) ("*Warren I*"), *vacated*, 484 U.S. 983, 108 S.Ct. 497, 98 L.Ed.2d 496 (1987), *on remand*, 845 F.2d 3 (1st Cir.1988) ("*Warren II*"). In *Warren I*, the Court of Appeals for the First Circuit vacated an arbitrator's award because the arbitrator did not properly act within the scope of his authority. The court also decided that the award violated public policy. The Supreme Court vacated the Court of Appeals' decision for further review in light of the Court's then recent decision in *Misco*. On remand, the Court of Appeals reaffirmed its holding in *Warren I* that the arbitrator exceeded his authority, but "assume[d] without deciding that *Misco* forecloses the alternate public policy grounds upon which [it] decided *Warren I*." *Warren II*, 845 F.2d at 7.

In *Warren*, the collective-bargaining agreement in question contained a Management Rights Clause which provided that: "[t]he Company reserves the *sole right* to manage the business of the Company ... This right includes but is not limited to ... the right to ... demote, transfer, discipline, suspend or discharge employees for *proper cause* ..." *Warren II*, 845 F.2d at 6 (emphasis added). The collective bargaining agreement also contained a Rules section entitled "*Causes* for Discharge". *Id.* (emphasis added). This section stated that "[v]iolations of the following rules are considered *causes* for discharge: (a) Possession, use or sale on Mill property of ... marijuana ..." *Id.* (emphasis added). The employee in the *Warren* cases was discharged for possession of marijuana on the employer's premises and was subsequently reinstated after arbitration. The arbitrator's "pivotal conclusion" was that the rule against possession of marijuana "did not use the obligatory 'must' when delineating the employer's right to terminate for violation of the rule." *Warren I*, 815 F.2d at 181. The arbitrator also noted the discrepancy between the "proper cause" language in the Management Rights Clause and the mere "cause" language in the Rules section. "This discrepancy, in the arbitrator's eyes, was sufficient to place the entire matter of discipline within her interpretative domain." *Id.*

The court in *Warren I* concluded that the arbitrator did not have the discretion which she sought to exercise. The court first noted that the "phrases 'proper cause' and just plain 'cause' in labor relations are interchangeable and have the same meaning." *Warren I*, 815 F.2d at 184. The court went on to say that: "If possession of marijuana is cause for discharge, as Mill Rule 7(a) flatly says, we are at a loss to see how it would not also be 'proper cause' for discharge." *Id.* The court concluded that "[w]hen the general just cause provision for discharge is coupled with a specific penalty provision, the appropriateness of the penalty is removed from consideration and is without the scope of review by the arbitrator." *Warren I*, 815 F.2d at 185. In sum, as reiterated in *Warren II*: "Nothing is left to the arbitrator's judgment except determining whether the

rules are violated." *Warren II,* 845 F.2d at 7.

Significantly for the purposes of this case, in *Warren* the collective bargaining agreement gave the company the sole right to discharge or otherwise discipline employees for proper cause and, in the collectively bargained for Mill Rules, stated that possession of marijuana was cause for discharge, without stating that any lesser penalty might be imposed. *Warren I,* 815 F.2d at 180. As the First Circuit put it:

> [T]he company and the union negotiated and incorporated in the collective bargaining agreement the disciplinary rules and the resulting penalties for violations of these rules. Nothing is left to the arbitrator's judgment except determining whether the rules are violated. An uncomplicated reading of the contract reveals that management has the sole right to discharge employees for cause, the definition of which includes possession of marijuana on mill property.

*Warren II,* 845 F.2d at 8. Thus, in the circumstances of *Warren,* employees were put on clear notice that possession of marijuana would result in discharge and no arbitrator would have the power to alter that penalty. *Id.*

The present case is distinguishable from *Warren* in several ways that the Court of Appeals for the First Circuit has deemed material. The CBA in this case provides, in essence, that: the Company has the right to terminate *or* otherwise discipline an employee for a Posted Offense, *see* CBA Section 11.02; an employee who commits a Posted Offense, including receiving a positive drug test, may be terminated *or* otherwise disciplined, *see* CBA Appendix–List of Posted Offenses; and an employee may contest any suspension or discharge (but not a lesser penalty) on the grounds that there was not just cause for it, *see* CBA Section 11.02. In contrast to *Warren,* the CBA in the instant case does not: expressly give the Company the sole right to determine the appropriate penalty; expressly state that a positive drug test is "cause" for termination; expressly put employees on notice that termination is the sole penalty which the Company will consider

for a positive drug test; or expressly state that a positive drug test is always "just cause" for termination. In similar circumstances, the Court of Appeals for the First Circuit has held that the failure of a collective bargaining agreement to specifically equate the commission of an offense with "cause" or "just cause" for dismissal gives the arbitrator discretion to review the discharge according to an independent "just cause" standard. *See Crafts Precision Industries v. Lodge No. 1836,* 889 F.2d 1184, 1185 (1st Cir.1989); *see also Metro Chevrolet v. Union de Tronquistas,* 835 F.2d 3, 4–5 (1st Cir.1987); *Laidlaw Waste Systems, Inc. v. Teamsters et al.,* 1990 WL 67865, *1 (D.Mass. 1990).

In *Crafts Precision,* an employee was discharged after refusing to follow a supervisor's direct order to train the son of the company's new owner. The collective bargaining agreement in question stated that, "the right to ... discipline or discharge for just cause ... [is] vested exclusively in the Employer." *Crafts Precision,* 889 F.2d at 1184–85. The arbitrator found that the employee's conduct violated a shop rule that listed one "example of conduct [that] may result in suspension, or immediate discharge, for the first offense" as "[i]nsubordination, willful disregard for, or refusal to comply with instructions from Management/Supervisory personnel." *Id.* at 1184. The collective bargaining agreement went on to say that "[e]mployees shall comply with all reasonable shop rules." *Crafts Precision,* 889 F.2d at 1185. Despite these provisions, the arbitrator found the penalty of discharge to be too severe and instead ordered a period of suspension without pay. *Crafts Precision,* 889 F.2d at 1185. The district court upheld the award and the Court of Appeals for the First Circuit affirmed.

In *Crafts Precision,* the Court of Appeals found the contract to be sufficiently ambiguous to provide the arbitrator discretion in fashioning an appropriate penalty. The court noted that "the Collective Bargaining Agreement, which says that 'Employees shall comply with all reasonable shop rules,' *does not* state expressly that violation of a shop rule is always 'just cause' for discharge."

*Crafts Precision,* 889 F.2d at 1185 (emphasis in original). The court specifically distinguished the *Warren* cases because, in those cases, "the contract itself expressly said that 'violation' of 'Mill Rule 7' was *'cause[ ] for discharge'....*" *Id.* at 1186 (quoting *Warren I,* 815 F.2d at 180) (emphasis added in *Crafts Precision* ). The court concluded that "the language of the Agreement here is substantially more open, or ambiguous, than the language at issue in [the *Warren* cases]," and that "the relevant language permits several plausible interpretations that support the arbitrator's result [—reducing the discharge to a lesser penalty]." *Id.* at 1185–1186.

The instant case is, in all material respects, factually analogous to *Crafts Precision.* This conclusion is reinforced by the Court of Appeals for the First Circuit's analysis in *Metro Chevrolet,* where the court found the situation indistinguishable from *Warren* because:

> This is not a situation where the collective bargaining agreement contained the general clause, e.g., "No employee shall be dismissed without just cause," and, at the same time failed to equate certain behavior with just cause, in which case an arbitrator is empowered to determine whether the employee's action which precipitated the dismissal constitutes just cause. Rather, in the present case, absence without prior authorization is specifically defined in the collective bargaining agreement as legal cause for dismissal....

*Metro Chevrolet,* 835 F.2d at 4–5. In the instant case, the existence of the just cause requirement, the CBA's failure to expressly equate a positive drug test with just cause for termination, and the fact that the CBA and Posted Offense list state that there is a range of punishments that may be imposed by the Company for a positive drug test created sufficient ambiguity to empower the arbitrator to determine whether the Company had the sole discretion to select the appropriate penalty to be imposed on Smith and, if not, whether there was just cause for his termination. *See Laidlaw,* 1990 WL 67865 at *1–2 (distinguishing *Warren* and following *Crafts Precision* in part because collective bargaining agreement did not expressly state that violations of a particular rule were "cause" for discharge).

In light of the Court of Appeals for the First Circuit's decisions in *Crafts Precision* and *Metro Chevrolet,* it would be incorrect to conclude that the arbitrator's interpretation of the CBA in this case "did not draw its essence from the contract." *Misco,* 484 U.S. at 38, 108 S.Ct. at 371. This court might have interpreted the CBA differently and found that having received the results of a positive drug test, Exxon had the sole discretion to decide if discharge was the most appropriate penalty, or found that a positive drug test in any event constituted just cause for termination. However, in reaching his decisions, the arbitrator was "arguably construing or applying the contract and acting within the scope of his authority ..." *Id.* The arbitrator's reasoning is not "so palpably faulty that no judge or group of judges could ever conceivably have made such a ruling." *Bettencourt,* 560 F.2d at 1050. Thus, the court must defer to the arbitrator's exercise of his authority. *Misco,* 484 U.S. at 38, 108 S.Ct. at 371; *Berklee College,* 858 F.2d at 32.

### D. *The Arbitrator's Award May Not Be Vacated on Grounds of Public Policy*

■ Exxon further contends that the arbitrator's award should be vacated on public policy grounds. The Supreme Court has recognized a limited, common law public policy exception to the general rule that arbitrators' awards should not be overturned on review absent fraud or arbitrator misconduct. *See Misco,* 484 U.S. at 42, 108 S.Ct. at 373; *W.R. Grace & Co. v. Rubber Workers,* 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983). "A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy." *Misco,* 484 U.S. at 42, 108 S.Ct. at 373.

In *W.R. Grace,* the Supreme Court noted that "the question of public policy is ultimately one for resolution by the courts." *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183.

The Court cautioned, however, that "a public policy ... must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *Id.* (quoting *Muschany v. United States,* 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945)). As the Court made clear in *Misco,* the decision in *W.R. Grace* "does not ... sanction a broad judicial power to set aside arbitration awards as against public policy." *Misco,* 484 U.S. at 43, 108 S.Ct. at 373. Rather, a court must decide whether an arbitrator's "award created any *explicit conflict* with other 'laws and legal precedents'...." *Id.* (emphasis added).

In *Misco,* an employee at a paper plant was discharged after marijuana was found in his car on company premises. *Id.* at 34, 108 S.Ct. at 368. After an arbitrator reinstated the employee, the Court of Appeals for the Fifth Circuit vacated the award on public policy grounds, alluding to the public policy "against the operation of dangerous machinery by persons under the influence of drugs or alcohol." *Misco, Inc. v. United Paperworkers International Union, AFL–CIO,* 768 F.2d 739, 743 (5th Cir.1985). The Supreme Court reversed the judgment because "[t]he Court of Appeals made no attempt to review existing laws and legal precedents in order to demonstrate that they establish a 'well defined and dominant' policy against the operation of dangerous machinery while under the influence of drugs." *Misco,* 484 U.S. at 44, 108 S.Ct. at 374 (quoting *W.R. Grace,* 461 U.S. at 766, 103 S.Ct. at 2183). In addition, the Court held that even if it were assumed that there was a properly defined public policy against operating dangerous machinery while under the influence of drugs, no violation of that policy had been "clearly shown" because the fact that traces of marijuana were found in the employee's car did not mean that he had worked while under the influence of marijuana, and it was the responsibility of the arbitrator rather than the court to determine if such a link had been established. *Id.* at 44–45, 108 S.Ct. at 374.

Applying these principles to the instant case, the court concludes that it is not appropriate to vacate the award reinstating Smith because it is contrary to public policy as it has been defined by the democratically accountable executive branch of the United States government. It is, of course, obviously dangerous for truck drivers to operate their vehicles while under the influence of drugs. However, in the instant case, as in *Misco,* the arbitrator did not find that the employee at issue was under the influence of drugs when he tested positive or that he had ever worked in such a condition. Thus, assuming there is a public policy prohibiting truck drivers from operating their vehicles while under the influence of drugs, a violation of that policy has not, as required, been "clearly shown" by the mere fact that Smith tested positive for having taken drugs at some unknown time. *Id.* at 43, 108 S.Ct. at 373.

As it is not established for the purposes of this case that Smith ever worked while under the influence of drugs, this case is materially different than many of those in which awards reinstating an employee have been vacated on public policy grounds. *See, e.g., Exxon Shipping Co. v. Exxon Seamen's Union,* 993 F.2d 357, 358–60 (3rd Cir.1993) (arbitrator reinstated oil tanker helmsman who had been discharged for a positive drug test after his tanker ran aground); *Exxon Shipping Co. v. Exxon Seamen's Union,* 11 F.3d 1189, 1190–91 (3rd Cir.1993) (arbitrator reinstated seaman discharged after being found intoxicated while on duty); *Delta Air Lines, Inc. v. Air Line Pilots Association,* 861 F.2d 665, 666–67 (11th Cir.1988) (arbitrator reinstated pilot who had flown plane while intoxicated); *Amalgamated Meat Cutters v. Great Western Food Co.,* 712 F.2d 122, 123–24 (5th Cir.1983) (arbitrator reinstated truck driver who overturned his truck while intoxicated).[1] Rather, this case is analogous to *Interstate Brands v. Chauffeurs, Teamsters, Ware-*

---

1. The present case is also distinguishable from those cases in which an arbitrator has reinstated an employee to a safety-sensitive position when the employee's on-duty conduct or performance has been found to be deficient. *See, e.g., Iowa Electric Light & Power Company v. Local Union 204,* 834 F.2d 1424, 1425–26 (8th Cir.1987) (arbitrator reinstated machinist in a nuclear power plant who had deliberately violated safety regulation).

housemen and Helpers Local Union No. 135, 909 F.2d 885 (6th Cir.1990), in which the Court of Appeals for the Sixth Circuit reversed a district court and declined to vacate an arbitrator's decision to reinstate a van driver who had been caught using drugs off-duty, stating:

> This district court failed to identify any law or legal precedent with which that arbitrator's reinstatement order would conflict. While it is indisputable that allowing intoxicated persons to drive motor vehicles violates public policy, it does not follow, however, that any arbitration award reinstating an employee discharged for being intoxicated while off-duty, or arrested for off-duty possession of controlled substances may never be enforced without violating the public policy exception of arbitration awards.

*Id.* at 893.

At the present time, the relevant regulations issued by the United States Department of Transportation—the authority with responsibility and expertise to establish public policy in this area—indicate that it is not contrary to public policy to reinstate a driver who has tested positive for drugs, but not been shown to have operated a vehicle while under their influence. The regulations do prohibit a driver who uses, or tests positive for, controlled substances from being on duty. *See* 49 C.F.R. § 391.95(a) and (b).[2] They do not, however, provide that termination, or a perpetual bar on reinstatement, are required once the employee has ceased using illegal drugs. Rather, the regulations indicate that, even in egregious cases where drug use is linked to the infliction of great

harm, reinstatement is permissible. For example, the regulations provide that: a driver who tests positive for use of a controlled substance when involved in a fatal accident is disqualified from driving for one year, *see* 49 C.F.R. § 391.117(b),[3] and a driver who is *convicted* of driving a commercial motor vehicle *while under the influence of a controlled substance* is disqualified from driving again for one year, *see* 49 C.F.R. § 383.51(b)(3)(i),[4] unless he or she was transporting hazardous materials, in which case the disqualification is three years, *see* 49 C.F.R. § 383.51(b)(3)(ii).[5]

Therefore, this court concurs with the Court of Appeals for the Ninth Circuit, which upheld an arbitrator's award reinstating two commercial vehicle drivers who had tested positive for drug use by referring to the foregoing regulations and stating:

> [The regulations] do not express "an explicit, well-defined and dominant" public policy permanently enjoining the employment of commercial motor vehicle drivers who test positive for drug use. The [Department of Transportation] regulations only prohibit employees who test positive for drug use from operating commercial motor vehicles; the [Department of Transportation] regulations do not require that such employees be automatically discharged.

*United Food & Commercial Workers International Union v. Foster Poultry Farms,* 74 F.3d 169, 174 (9th Cir.1995).

In this case, the arbitrator's award occurred after Smith had been off-duty for two years, and ordered a two month suspension. The arbitrator directed that Smith pass a

---

**2.** 49 C.F.R. § 391.95(a) provides, in pertinent part, that: "No driver shall be on duty . . . if the driver uses any controlled substances. . . ." 49 C.F.R. § 391.95(b) provides, in pertinent part, that: "No driver shall be on duty . . . if the driver tests positive for use of controlled substances. . . ."

**3.** 49 C.F.R. § 391.117(b) provides that: "A driver shall be disqualified by issuance of a letter of disqualification for a period of 1 year for a positive test of controlled substance use when the driver has been involved in a fatal accident."

**4.** 49 C.F.R. § 383.51(b)(3)(i) provides that: "A driver who is convicted of [driving a vehicle

while under the influence of a controlled substance] is disqualified for a period of one year provided the vehicle was not transporting hazardous materials required to be placarded under the Hazardous Materials Transportation Act (49 U.S.C.App. 1801–1813)."

**5.** 49 C.F.R. § 383.51(b)(3)(ii) provides that: "A driver who is convicted of [driving a commercial motor vehicle while under the influence of a controlled substance] is disqualified for a period of three years if the vehicle was transporting hazardous materials required to be placarded under the Hazardous Materials Transportation Act (49 U.S.C.App. 1801–1813)."

drug test before returning to work.[6] In addition, 49 C.F.R. § 382.605, which was promulgated after Smith's suspension, requires that he also receive an evaluation by a substance abuse professional,[7] and, if he is deemed to require "assistance in resolving problems associated with . . . controlled substance use," that he be tested for controlled substance use periodically upon returning to work.[8]

In these circumstances, the court cannot properly conclude that the arbitrator's order that Smith be reinstated violated public policy, as it is defined by the Department of Transportation in the regulations that address the issues here presented. *Muschany,* 324 U.S. at 66, 65 S.Ct. at 451. Thus, the arbitrator's award must be affirmed.

E. *Neither Party Is Entitled To An Award of Costs or Attorney's Fees.*

■ An award of costs and attorney's fees is appropriate when "a party 'without justification' contests an enforceable award." *Courier–Citizen v. Boston Electrotypers Union,* 702 F.2d 273, 282 (1st Cir.1983). It is not appropriate to award attorneys' fees to either party in this case. The Union has prevailed. The Company raised two substantial issues, which it was justified in litigating.

III. ORDER

Accordingly, for the foregoing reasons, it is hereby ORDERED that:

1. The defendant's motion for summary judgment and reinstatement is ALLOWED.

2. The plaintiff's cross-motion for summary judgment is DENIED.

3. Upon Albert Smith's reinstatement, the parties shall ensure full compliance with the requirements of 49 C.F.R. § 382.605.

4. The issue of the amount of back pay to be awarded to Albert Smith is remanded to the arbitrator.

5. No costs or attorneys' fees, to either side, are awarded.

---

6. It does not appear that Smith has been driving for Exxon during the pendency of this case. In its memorandum, the Union states that: "The Company has failed to comply with the arbitrator's award. It has failed to have Smith retested and has denied him the opportunity to prove his compliance with the prerequisites of the arbitrator's order." Defendant's Memorandum, p. 3.

7. 49 C.F.R. § 382.605(b) provides that: "Each driver who engages in conduct prohibited by subpart B of this part shall be evaluated by a substance abuse professional who shall determine what assistance, if any, the employee needs in resolving problems associated with alcohol misuse and controlled substance use."

8. 49 C.F.R. § 382.605(c)(2)(ii) provides, in pertinent part, that if a driver is identified as "needing assistance," he "shall be subject to unannounced follow-up alcohol and controlled substance tests administered by the employer following the driver's return to duty." Section 382.605(c)(2)(ii) goes on to specify certain conditions and requirements of this return-to-duty drug testing.