BOUDIN, Chief Judge
(Concurring).
Leo Beaupre, then an employee of Poland Spring Corp. at its facility in Maine, refused in February 2000 several direct instructions from two supervisors to pick up some bottles scattered under a table. The company’s contract with Beaupre’s union provides that “[discipline and discharge shall occur only for just cause. The parties agree that just cause for discharge shall include, but not be limited to, the following: ... Insubordination.... ” After a warning, Beaupre was discharged, and the union sought arbitration pursuant to the contract.
In due course, the arbitrator found that Beaupre had clearly violated direct orders from his superiors even after he was advised that this could be a firing offense, and the arbitrator found unsupported several excuses offered for Beaupre’s refusals ie.g., health concerns). However, the arbitrator ruled that under the contract “mitigating considerations” permitted the arbitrator to conclude that termination was too severe a penalty; finding mitigation here — for example, tasteless jokes by Beaupre’s direct supervisor — the arbitrator ruled that the penalty should be reduced to two weeks’ suspension without pay.
Affirming the district court, the panel majority now holds that the arbitrator exceeded his authority in directing Beaupre’s reinstatement. It is common ground that the arbitrator is bound by provisions of the contract but also that the arbitrator can construe the contract. See United Paperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In effect, the arbitrator takes over the court’s role of initial construction; but there remains a vaguely defined limit: a reviewing court may still conclude that the arbitrator is re-writing the terms instead of construing them. See id.
Here, the arbitrator could permissibly have read the contract to mean that some acts of disobedience constitute “insubordination” within the meaning of the contract and that other, less severe acts — although literally disobedience — do not. “Insubordination” is not defined in the contract nor is it self-defining and, reading the provision in context, a judge (and even more *38 surely an arbitrator) would be likely to exclude trivial disobedience, such as a refusal to light the supervisor’s cigarette. Consider that lack of cleanliness is also listed as a basis for discharge under this contract, but certainly a smudge on a nose would not qualify for discharge. So, taking account of the severity of the disobedience is, within broad limits, surely a part of the arbitrator’s authority.
Viewed de novo, it is a more difficult question whether the present contract can be read to limit management’s right to discharge an insubordinate employee where there exist “mitigating considerations.” Of course, lack of the severity of disobedience could be viewed as a mitigating consideration; but the arbitrator’s claim in this case is not focused on lack of severity. Rather, he claimed and exercised a broader mandate to take into account anything that might equitably bear on whether a discharge for disobedience seemed fair and proportionate.
Most judges, interpreting this contract for themselves, would probably reject this latter reading. Taking the contract as a whole, it explicitly reserves disciplinary authority to management, save as constrained by other provisions. Most judges would likely take the “just cause” provision quoted above as licensing management to discharge an employee who was patently “insubordinate,” even if he had served the company loyally for a decade and had a sick wife at home and a child in college. The contract does not say that discharge for insubordination is permitted only where “just” or “fair.”
Even so, the parties in this case empowered an arbitrator to interpret the contract and that includes the power to adopt readings that a judge might reject if no arbitrator were involved. Does this include a reading that allows the arbitrator to say that disobedience is “insubordination” if there are adequate “mitigating considerations” that have nothing to do with whether the disobedience was clear, deliberate, and pertinent to the employee’s duties? This is a stretch of language, to be sure, but whether it goes too far to be a permissible arbitrator reading is something about which reasonable judges might differ.[3]
This debatable issue has been resolved in this circuit. In two different cases, this court has ruled that contracts, similarly structured as that at issue here, give management a right to discharge an employee guilty of a listed offense, and that an arbitrator cannot mitigate the penalty because of ameliorative circumstances. See Georgia-Pacific Corp. v. Local 27, United Paperworkers Int’l Union, 864 F.2d 940 (1st Cir.1988); S.D. Warren Co. v. United Paperworkers’ Int’l Union, 845 F.2d 3 (1st Cir.), cert. denied, 488 U.S. 992, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988).
In S.D. Warren, 845 F.2d at 6, the contract reserved to management “sole” authority to discipline, subject to appended rules; and the appended rules said that “[violations” of specified rules were “causes for discharge,” including “[pjossession” of marijuana on company property. The discharged employees had possessed marijuana at the plant, but the arbitrator ruled that the sanction was too severe. Id. The Warren decision held that the arbitrator had exceeded his power. Id. at 8.
*39 A similar conclusion was reached in Georgia-Pacific, 864 F.2d at 942-43: the contract permitted discharge for “dishonesty,” and the employee had reported himself unable to work for medical reasons and had instead participated in a golf tournament. The arbitrator ordered reinstatement based on the employee’s many years of service. Id. at 944. Again, the court held that the arbitrator was improperly rewriting the contract. Id. at 946. Thereafter, this court several times acknowledged that S.D. Warren/Georgia-Pacific were the rule even in cases where the court managed to distinguish those cases on their facts. E.g., Keebler Co. v. Truck Drivers, Local 170, 247 F.3d 8, 13-14 & n. 2 (1st Cir.2001); Crafts Precision Indus., Inc. v. Lodge No. 1836, Int’l Ass’n of Machinists, 889 F.2d 1184, 1185-86 (1st Cir.1989).
Based on first principles and Supreme Court precedent, the dissenting opinion in this case argues (in substance) that S.D. Warren and Georgia-Pacific were mistaken. The first principles, themselves derived from Supreme Court precedent, are inevitably quite general statements about the scope of and limits to arbitrator authority; some language helps Beaupre, some helps the company, and none of it in a debatable case like this one would be decisive if we were deciding this case without any governing circuit precedent.
As for the Supreme Court’s holdings, only Misco has facts arguably close to our own.[4] In Misco, 484 U.S. at 41-42, 108 S.Ct. 364, the Court said that an arbitrator could impose a lesser remedy than discharge, arguably in a situation not too far from our own. But the Court’s rationale is somewhat cryptic and turned in some measure on a peculiar stipulation of the parties that the issue in dispute was the existence of “just cause,” which was said to be open to arbitral determination. Id. Read evenhandedly, Misco is of some help to Beaupre but also could itself be distinguished.
But this panel is not free to resolve this case based on first principles or a reading of Misco favorable to Beaupre. S.D. Warren was decided after Misco—indeed, on remand after an earlier S.D. Warren decision had been vacated by the Supreme Court for reconsideration in light of Misco. S.D. Warren, 845 F.2d at 4. The decision in S.D. Warren is expressly a determination that neither Misco nor first principles preclude the decision by this court in S.D. Warren—a decision that pretty clearly embraces our own facts.
If our own case were before us as the first one to arise after Misco, its proper disposition would present a difficult and interesting issue. But the rule that binds successor panels, which serves to make law predictable, is decisive for me. United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir.), cert. denied, 502 U.S. 969, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991).

. For example, immediate consideration of ''fairness” might push in one direction; in the other, the long-term cost of unpredictability leading in turn to increased difficulty in negotiating even more detailed provisions. Another factor, which might cut either way, might be the practice in the industry. Yet another would be how far the particular equities urged still had some connection with the statutory language.

. Other decisions include Eastern Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), and Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001). In Eastern, 531 U.S. at 60, 67, 121 S.Ct. 462, the Court affirmed the arbitrator's award because the arbitrator did not find "just cause” for discharge, and the parties, by agreement, entrusted the remedial decision to the arbitrator. In Garvey, 532 U.S. at 510, 121 S.Ct. 1724, the Court held that an arbitrator’s award could not be set aside because of a court's disagreement with the arbitrator’s factual findings.